**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **US FOODS, INC.,** a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. :  14-cv-5554 |
| | ) | |
| **PAUL MELIDONA,** an individual; **DAVID HOUCK,** an individual; and **LATINA BOULEVARD FOODS, LLC,** a Florida limited liability company, | ) | **JURY DEMAND REQUESTED** |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff US FOODS, INC. ("US Foods"), for its Complaint for Injunctive and Other

Relief against Defendants PAUL MELIDONA ("Melidona"), DAVID HOUCK ("Houck"), and

LATINA BOULEVARD FOODS, LLC ("Latina Foods"),[1] states as follows:

## INTRODUCTION

1.      This action for a temporary restraining order, a preliminary injunction and for

damages arises out of the Defendants' extraordinary efforts to unfairly and unlawfully compete

with US Foods through the Individual Defendants' breaches of their written employment

agreements expressly prohibiting the solicitation of US Foods' customers and employees, as well

as the retention and disclosure of US Foods property; deliberate misappropriation and actual

disclosure of US Foods confidential trade secrets and business information; breach of fiduciary

duties and duties of loyalty by the Individual Defendants by actively assisting and conspiring

---

[1] Melidona and Houck are collectively referred to as the "Individual Defendants."  The
Individual Defendants and Latina Foods are collectively referred to as the "Defendants."

with Defendant Latina Foods to poach US Foods employees for and divert business to Latina Foods while still employed by US Foods; tortious interference with contract by purposefully inducing the Individual Defendants to breach their written agreements with, and common-law duties to, US Foods; and the Individual Defendants' breaches of their the common-law and statutory obligations to US Foods.

2.     Indeed, as set out in more detail below, this action involves nothing less than a conspiracy by Defendants to pilfer US Foods' business and workforce.  US Foods' investigation has revealed that Defendants actively conspired for several months to usurp US Foods' business opportunities and customers and interfere with and improperly solicit US Foods' employees.

3.     US Foods is informed and believes that Latina Foods planned to significantly expand its business within the next year, and, to achieve such, coordinated a scheme with the Individual Defendants—while they were still employed by US Foods—to steal US Foods' most valuable customers and employees, and to steal US Foods' confidential, proprietary, and/or trade secret information.

4.     Despite a contractual obligation owed to US Foods that required the Individual Defendants to not solicit only hundreds of the thousands of restaurants and pizzerias throughout the Northeast region, the Individual Defendants, on behalf of Latina Foods, targeted the specific set of customers they previously serviced in violation of their respective Non-Solicitation and Non-Disclosure Agreements ("NSNDA").  Upon information and belief, the Individual Defendants have diverted business to Latina Foods by misusing US Foods' confidential and trade secret information, and taking unfair advantage of the goodwill developed by US Foods at its great time and expense.

5.       Prior to resigning from US Foods, the Individual Defendants, with direct assistance and coordination with Latina Foods, created a plan to transfer US Foods' customers they serviced to their new employer, Latina Foods.  Upon information and belief, this plan was born out of a secret meeting between the Individual Defendants and executives of Latina Foods in March of 2014, while the Individual Defendants were still employed with US Foods.  To accomplish this, the Individual Defendants undertook steps to unfairly compete with US Foods, and misappropriated US Foods' confidential information to solicit US Foods' customers.

6.       Prior to, and continuing after submission of his notice of resignation, Defendant Houck misappropriated several US Foods documents by e-mailing them to his personal e-mail account.  These documents included, among other things, documents and spreadsheets containing US Foods' most confidential and proprietary information regarding its sales associates and customers.  In particular, Defendant Houck misappropriated a US Foods spreadsheet identifying and ranking its most profitable and successful sales associates, which also contained detailed sales and profit information.  Defendant Houck also misappropriated a US Foods spreadsheet identifying its newly acquired, and in turn, most vulnerable customer accounts.

7.       Defendant Melidona also misappropriated US Foods' confidential, proprietary, and/or trade secret information regarding one of its largest and most valuable customers, Franco's.  Since Melidona's resignation from US Foods, Franco's has transferred a substantial amount of business away from US Foods to Latina Foods.  Upon information and belief, Defendants Houck and Melidona also did not return all US Foods hard copy documents containing confidential, proprietary and trade secret information.

8.      The Individual Defendants' unfair and unlawful conduct was not limited to the theft of US Foods' property and confidential, proprietary, and/or trade secret information.  They, with the support and coordination of Latina Foods, systematically attempted to raid US Foods' workforce, and in particular, US Foods' most successful employees including, John Loffredo, Robert Divita, Michael Stiglemeier, and Salvatore Mallia.

9.      US Foods sent cease and desist letters to the Individual Defendants and Latina Foods reminding them of the Individual Defendants' contractual obligations and US Foods' legal rights.  Defendants were undeterred.  They have refused to stop their wrongful activities, and have failed to return US Foods' property, including its confidential, proprietary, and trade secret information.  US Foods is concerned that the Defendants will continue to unlawfully interfere with US Foods' relationship with its customers and employees, continuing to cause extensive damage to US Foods' business, customer, and employee relationships, such conduct which, therefore, necessitates injunctive relief.

10.      US Foods now seeks to enjoin the Individual Defendants from breaching their NSNDAs with US Foods and impermissibly soliciting US Foods' customers and employees.  US Foods also seeks to enjoin Defendants from misappropriating or threatening to misappropriate, from disclosing and/or using US Foods' confidential, proprietary and trade secret information, and seeks the immediate return of all its property, including its confidential, proprietary and trade secret information from Defendants.

11.      This Court is the proper forum and venue for this dispute, and it has personal jurisdiction over each of the Defendants.  The Individual Defendants entered into binding and enforceable Non-Solicitation and Non-Disclosure Agreements with US Foods that contained a mandatory forum selection clause identifying the state and federal courts of Chicago, Illinois as

the exclusive venue for any litigation between the Individual Defendants and US Foods that

arises out of or relates to the Non-Solicitation and Non-Disclosure Agreements. Those

Agreements are also to be governed by and construed in accordance with the laws of the State of

Illinois. These types of mandatory forum selection clauses have been repeatedly enforced by

Courts in this District.

12.     As US Foods' principal place of business is in Illinois, and US Foods regularly

conducts business in Illinois, the Individual Defendants also had substantial minimum contacts

with this State. Their respective employment with US Foods required the Individual Defendants

to regularly communicate with US Foods' headquarters in Illinois, and they attended work-

related conferences in Illinois. The Individual Defendants also committed and continue to

commit tortious acts related to this State. The ultimate effect and harm of the tortious activity

undertaken by the Individual Defendants was aimed at and calculated to cause injury to US

Foods in Illinois, and is ultimately felt in Illinois.

13.     This Court also has personal jurisdiction over Defendant Latina Foods. Latina

Foods knew, at all relevant times, that US Foods' employees were bound by the NSNDAs, and

that the Individual Defendants agreed to personal jurisdiction in Illinois. Latina Foods is

therefore bound by the same mandatory forum selection. Latina Foods is "closely related" to the

Individual Defendants who are bound by the mandatory forum selection clause set forth in their

respective NSNDAs. Latina Foods also committed and continues to commit tortious acts related

to this State, including tortiously interfering with Illinois contracts and misappropriating trade

secrets from an Illinois company. The brunt of the harm from Latina Foods' conduct as alleged

herein is felt in Illinois and has harmed US Foods in Illinois. The ultimate effect and harm of the

5

tortious activity undertaken by Latina Foods was aimed at and calculated to cause injury to US Foods in Illinois.

14.     US Foods further seeks an order directing the Defendants to account for the whereabouts of US Foods' confidential, proprietary and/or trade secret information and to produce for inspection all computers, smart phones, e-mail accounts, and other media on which US Foods' property, including confidential, proprietary and/or trade secret information may currently reside or on which such information was previously stored.  While US Foods has been irreparably harmed, US Foods also seeks all of the damages it has suffered as a result of the Defendants' actions and US Foods' efforts to recover and protect its confidential, proprietary and/or trade secret information, and its customer and employee relationships.

15.     It is clear that the Individual Defendants do not intend to abide by their contractual and legal obligations to US Foods without Court intervention.  The Individual Defendants ignored US Foods' efforts to have them voluntarily abide by their legal obligations by failing to adequately respond to cease and desist letters and other reminders from US Foods. To date, the Individual Defendants remain in possession of US Foods' property, including its confidential, proprietary, and/or trade secret information and have refused to return it.

16.     Consequently, US Foods has no choice but to bring this action, among other things, to protect its property, including its confidential, proprietary, and/or trade secret information, to protect its workforce from unlawful raiding (including inducing or attempting to induce US Foods employees to breach their contractual obligations with US Foods), and to seek redress from the irreparable harm that the Defendants' wrongful conduct has caused and will continue to cause US Foods to suffer.

6

## PARTIES

17.     Plaintiff US Foods is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Rosemont, Illinois.

18.     Defendant Latina Foods is a Florida limited liability company, with its principal place of business in Cheektowaga, New York, and whose members are all citizens of the state of New York.  Latina Foods is a direct competitor of US Foods.

19.     Defendant Melidona is a New York citizen domiciled in New York.  Melidona was employed by US Foods until his resignation on or about May 30, 2014.  At the time of Melidona's departure from US Foods, he served as a District Sales Manager in US Foods' Buffalo Division.  Defendant Melidona is now employed by Latina Foods in substantially the same position he previously held with US Foods.

20.     Defendant Houck is a New York citizen domiciled in New York.  Houck was employed by US Foods until his abrupt resignation on or about June 20, 2014.  At the time of Daigle's departure from US Foods, he served as a Territory Manager in US Foods' Buffalo Division.  Defendant Houck is now employed by Latina Foods in substantially the same position he previously held with US Foods.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states (US Foods is a Delaware corporation with its principal place of business in Illinois, the Individual Defendants are New York citizens, and Latina Foods is a Florida and New York citizen) and the matter in controversy exceeds $75,000 excluding interest and costs.

22.     This Court has personal jurisdiction over the Defendants, and venue is proper in

7

this District under 28 U.S.C. § 1391(a) because the Defendants committed and continue to commit tortious acts in and/or related to this State.  US Foods' principal place of business is in Illinois, and regularly conducts business in Illinois.  In addition, the Individual Defendants entered into Non-Solicitation and Non-Disclosure Agreements with US Foods agreeing to personal jurisdiction in Illinois.  The Individual Defendants also had substantial contacts with this State as their employment with US Foods required them to regularly communicate with US Foods' headquarters in Chicago, Illinois, and they attended work-related conferences in Illinois. Further, this Court has personal jurisdiction over Latina Foods, which is registered to do business in Illinois, and as it knew, at all relevant times, that US Foods' employees were bound by the NSNDAs, and that they had agreed to personal jurisdiction in Illinois, and Latina Foods is therefore bound by the same forum selection.  Latina Foods is "closely related" to the Individual Defendants who are bound by the mandatory forum selection clause set forth in their respective Non-Solicitation and Non-Disclosure Agreements.  Finally, US Foods' principal place of business is in Illinois, it regularly conducts business in Illinois, and the brunt of the harm from Defendants' conduct as alleged herein is felt in Illinois and has harmed US Foods in Illinois. The ultimate effect and harm of the tortious activity undertaken by Defendants was aimed at and calculated to cause injury to US Foods in Illinois, and is ultimately felt in Illinois.

23.     Venue is also proper in this District because, in addition to the exclusive venue agreed to by the Individual Defendants in their NSNDAs with US Foods (by which Latina Foods is also bound, as detailed above),  relevant witnesses, documents, and electronic files that bear directly on the issues presented in this action are in Illinois.  Relevant information technology specialists and information systems are, in part, housed in Illinois, and their ongoing investigation and examination are essential to the present dispute.

## EVENTS GIVING RISE TO THIS ACTION

I.    US FOODS' BUSINESS, AND ITS CONFIDENTIAL, PROPRIETARY AND/OR TRADE SECRET INFORMATION

24.    US Foods is one of America's leading foodservice distributors. US Foods sells over 350,000 national brands, as well as its own high-quality private label items, ranging from meat and produce to specialty gourmet foods. US Foods provides the finest quality food and related products to more than 250,000 customers, including independent restaurants, government operations, healthcare and hospitality entities, educational institutions and national chains.

25.    Nationally, US Foods employs approximately 25,000 people in more than 60 locations. US Foods is incorporated in Delaware but operates nationwide. For sales purposes, US Foods is organized into geographical divisions within each of its eight regions.

26.    US Foods' Buffalo Division sells food products and services to customers located in the Northeast. The Buffalo Division has a longstanding presence in the Buffalo area, employing approximately 272 people in the cities of Buffalo, New York, and the surrounding cities, and conducts millions of dollars of business in the Northeast.

27.    US Foods' success is driven by its continuous efforts to provide the best products, value, and service to its customers. US Foods has invested substantial money and resources in structuring and operating its business to provide high-quality product and service offerings to its customers at the best possible value. US Foods has, as a result, successfully established and maintained over a long period of time both local (also known as "street") and national customer accounts by offering the highest quality and value services and products.

28.    US Foods' success in the highly competitive food distribution business is a result of decades of hard work and ingenuity. US Foods' confidential, proprietary, and trade secret information, as well as its employee and customer relationships, are the lifeblood of its business.

US Foods' business is profitable by virtue of its strategic structuring and implementation of cost methodologies, margins, discounts, deviations, internal pricing, all of which are maintained by the company as highly confidential and are not known to US Foods' competitors by legitimate means.

29.     US Foods' confidential and proprietary information also includes, but is not limited to, its confidential incentive/rebate information, vendor price deviation information, and delivery routing information.  US Foods provides TMs with access to: (1) US Foods' confidential agreements with its customers setting forth specific and particularized volume-based incentives for particular customers; (2) confidential special pricing deviation agreements between US Foods and particular product vendors containing information regarding special pricing provided to US Foods for specific customers; and (3) internal delivery schedules, which contain comprehensive details regarding every US Foods customer in their market, and information regarding the customers' delivery days, frequency of deliveries, special handling of deliveries, and expected delivery windows.  None of this information is shared with US Foods' customers and is not known to US Foods' competitors, thereby providing US Foods with a competitive advantage.

30.     US Foods' confidential and proprietary information includes, but is not limited to, its confidential pricing and ordering information.  US Foods provides its employees, including the Individual Defendants, with the True Market Cost ("TMC") of US Foods' products, its profit margins and the average selling price of an item in a particular area, referred to as "Floor," "Commission" and "Average" Prices.  US Foods also provides its employees, including the Individual Defendants, with access to: (1) US Foods' customer order guides, which contain each existing customer's purchasing history, including the type of products purchased and pricing, as

10

well as the date on which a US Foods' product was last purchased ("Customer Order Guides");
and (2) call schedules, which contain critical information regarding (a) the day(s) of the week on
which a TM is to contact the account to take an order; and (b) the day(s) of the week on which
the order is to be delivered ("Call Schedules").  Call Schedules are not shared with US Foods
customers and are not known to its competitors, thereby providing US Foods with a competitive
advantage.

31.     US Foods' senior sales, business development, and marketing personnel are
successful based, in part, on their access to US Foods' confidential pricing, discounts,
allowances, margins, and cost information.  Moreover, US Foods' senior sales, business
development, and marketing personnel are responsible for developing the same.  Certain
confidential product pricing and margin information is provided in strict confidence to US
Foods' Territory Managers to allow them to competitively service, and provide the best value to
US Foods' customers.

32.     US Foods also spends extensive time and substantial money identifying and
maintaining key customer relationships, designing customer initiatives, determining strategic
acquisitions, allocating resources for new technologies and innovations, creating annual business
and marketing plans, and developing and launching new products.

33.     Maintaining its goodwill and business reputation with its customers is highly
critical to US Foods' success.  Because US Foods' business contains a service component, the
relationships that US Foods has with its customers are highly dependent on the attention and
service which US Foods gives to them on an ongoing basis.  Such attention enables customers to
develop confidence in the quality of the products offered, and an increased recognition of, and
familiarity with, the US Foods name as a provider of quality food products.  Indeed, repeat

business with its established customers allows US Foods to maintain its strategic position in this highly competitive industry.

34.     US Foods' Territory Managers, and to some degree, its District Sales Managers, are the face of US Foods in this regard.  Their job duties focus on building and maintaining successful customer relationships.  The Territory Managers become familiar with each customer's particularized needs, including, for example, the specific types and brands of food products they require for their respective businesses, and then work with a network of suppliers and vendors to service those needs.

35.     The emphasis on nurturing these customer relationships is a large part of what drives the success of US Foods.  Many of US Foods' customer relationships span the course of several years due to the quality of the products, competitive prices and the exceptional customer service US Foods offers.

36.     US Foods' Territory Managers and District Sales Managers are responsible for handling and maintaining US Foods' customer accounts located in certain geographical regions, known as "territories."  Territory Managers generally service existing US Foods' customers in their territories by calling on them, in-person, at their place of business once a week or more. During this visit, the Territory Manager takes the customer's order of US Foods' product offerings and make sure that delivery of the order is scheduled on the appropriate day(s).

37.     Territory Managers and District Sales Managers negotiate prices with the customers and introduce customers to new US Foods products, specials and technological innovations, such as online ordering.  These interactions are confidential to US Foods' business and not generally known to US Foods' competitors.

38.     US Foods invests significant time and resources in training its Territory Managers

so that they can provide the high level of customer service for which US Foods is known.

39.     For instance, US Foods provides new Territory Managers with eleven to sixteen weeks of orientation, including but not limited to, training on US Foods' ordering and reporting systems, setting prices, opening new accounts and further penetrating existing accounts in order to be able to service US Foods' customer accounts.

40.     US Foods also provides continuing education to Territory Managers in order to advance sales skills, increase product knowledge or more effectively set product prices. Learning how to effectively set product prices is important because Territory Managers have significant discretion when it comes to setting the prices for the products they sell.

**B.      US Foods' Confidential and Proprietary Information**

41.     US Foods' business information, including its confidential, proprietary and trade secret information, customer relationships and goodwill, are of paramount significance to its business reputation and its success.

42.     US Foods' trade secrets include, but are not limited to, its product costs, margins, discounts, pricing strategies and similar information stored in password-protected files on US Food computer systems.  In addition, US Foods considers its information regarding its customers, such as purchasing history, contact information, preferences and pricing to be trade secrets.  For instance, such information is compiled in US Foods' customer order guides, which contain information regarding each existing customer's purchasing history, including the type of products purchased and pricing, as well as the date on which a US Foods' product was last purchased Customer Order Guides.  In order to carry out their duties for US Foods, Territory Managers have access to this trade secret information.

43.     In regard to US Foods' pricing information, US Foods employees, including the

Individual Defendants, have access to the following trade secret price information for US Foods products:

    a.  "Floor Price" or "LIC," which is US Foods' net cost of bringing an item in;

    b.  "Commission Price" or "SRC," which is US Foods' net cost of bringing an item in and a profit margin from which a Territory Manager's commission is based.

    c.  "Average Price," which is created by US Foods to give Territory Managers an indicator of what the average selling price for a particular product is; and

    d.  "Retail" or "List Price," which is the average price plus a certain profit margin.

44.    The Floor, Commission and Average Prices are confidential and proprietary to US Foods. They are not shared with US Foods' customers and are not known by competitors in the foodservice industry.

45.    Territory Managers and their District Sales Managers have extensive discretion in setting prices and the profit margins from which they receive their commission for the US Foods' customers they service.

46.    US Foods employees, including the Individual Defendants while employed by US Foods, also routinely access US Foods' national databases, which include its Linc, Edge, and Merlin computer systems, using US Foods' secure, password protected virtual private network ("VPN").

47.    Linc is a customer relations management tool. Linc allows Territory Managers to manage and store information regarding existing US Foods' customer accounts, as well as prospective US Foods' customer accounts or business opportunities.

48.    Linc tracks, among other things, an existing customer's sales history, pricing, product orders, and profits. Linc also stores a Territory Manager's route or "call" schedules.

Call schedules contain critical information needed by US Foods to service its customers, including (1) the day(s) of the week on which a Territory Manager is to contact the account to take an order; and (2) the day(s) of the week on which the order is to be delivered. Without this information, US Foods cannot service its customers properly ("Call Schedules").

49. Edge is a system which allows the Territory Manager to store their list of accounts, products lists, accounts receivable, and Customer Order Guides.

50. Merlin is a querying database that allows the Territory Manager to call up historical data and sales information relating to US Foods' customers.

51. In sum, US Foods' compilation of information with respect to its customers, the broad network of relevant individual contacts in the food industry, customer histories and purchasing trends, products, suppliers, pricing, distribution and sales and marketing strategies, all of which were developed over time at great expense to US Foods, are all integral to US Foods' efforts at developing and maintaining customer relationships and customer goodwill.

52. US Foods' trade secret information is not generally known in the industry and is valuable because US Foods derives economic value and a competitive advantage from the information not being publicly available.

53. US Foods' trade secret information would give any competitor who improperly acquired such information an unfair competitive advantage by, among other things: (a) not having to expend the time and resources to develop the trade secret information as US Foods has done; (b) allowing a competitor to quickly develop strategies, marketing plans, products and services to unfairly compete with US Foods in order to diminish US Foods' competitive advantage; and (c) alerting a competitor to initiatives that should not be pursued.

**C.**    **US Foods Protects its Confidential Information.**

54.    US Foods protects its trade secret business and customer information by, among other safeguards: requiring employees to keep confidential business and customer information confidential; password protecting computers; limiting access to information; marking documents confidential; requiring employees to sign non-disclosure and non-solicitation agreements and computer access and use agreements; and requiring employees to acknowledge receipt of and agree to comply with US Foods' Employee Handbook (which includes the obligation to protect US Foods' trade secret information).

55.    US Foods password protects the Linc, Edge, and Merlin systems discussed above. US Foods also restricts the information Territory Managers can access in Linc, Edge, and Merlin to those accounts which the Territory Manager is responsible for servicing or for which he has provided vacation relief. In other words, a Territory Manager cannot access information regarding another Territory Manager's accounts that he or she has never serviced.

**F.**    **The Individual Defendants' Employment with US Foods and Their Contractual Obligations to US Foods.**

56.    In return for valuable consideration, the Individual Defendants entered into Non-Solicitation and Non-Disclosure Agreements ("NSNDAs") with US Foods. The Individual Defendants received, among other things, continued employment, incentive compensation, eligibility in US Foods' Points of Focus incentive program, raises, and/or access to new US Foods confidential, proprietary, and/or trade secret information. US Foods asks its District Sales Managers and Territory Managers to sign Non-Solicitation and Non-Disclosure Agreements.

57.    The most recent NSNDA executed by Melidona was signed on November 26, 2013. Melidona was eligible for and received bonuses associated with entering into the 2013

NSNDA.  Melidona also signed an NSNDA with similar confidentiality, nondisclosure, return of property, and nonsolicitation provisions on December 16, 2011. True copies of the NSNDAs are collectively attached hereto as **Exhibit A**.

58.     The most recent NSNDA executed by Houck was signed on November 26, 2013. Houck was eligible for and received bonuses associated with entering into the 2013 NSNDA. Houck also signed an NSNDA with similar confidentiality, nondisclosure, return of property, and nonsolicitation provisions on December 15, 2011. True copies of the NSNDAs are collectively attached hereto as **Exhibit B.**

59.     Melidona and Houck's NSNDAs contain identical provisions.  Specifically, the NSNDAs contain a provision whereby the Individual Defendants agreed not to directly or indirectly use any of US Foods' Confidential Information after termination of employment, or during employment, other than as required for the performance of their job duties and as authorized by US Foods.  (NSNDAs at § 4.)

60.     The NSNDAs define "Confidential Information" at Section 2(e) as:

any information (in whatever form and whether or not recorded in any media) relating to the Business of the Company (whether constituting a trade secret or not) and including, but not limited to, customer lists or other documents containing the names and/or job titles of the principal contact(s) of each customer; customer documents, routing arrangements, files, purchases and account history; route lists of sales employees; pricing, margins, sales allowance, discounts, incentives and pricing policies; invoices; marketing and product information; order guides or histories; sales data for any employee, product, customer or territory; sales and delivery schedules; credit terms, policies and information, including payment records; information on customer preferences; promotional programs; financial information of the Company or its customers; the terms, conditions and structures of the Company's contracts and agreements with customers, vendors and suppliers; information pertaining to the Company's methods of operation, processes, strategies and techniques, including strategies for identifying and satisfying the needs of specific customers and types of customers; and lists containing personal information about other employees of the Company, including but not limited to their home and business telephone, mobile and pager numbers, addresses, compensation terms, customers served by such

employees, and job performance; which (i) is or has been disclosed to Employee (or of which Employee became aware) as a consequence of or through his or her relationship to the Company, (ii) has value to the Company or would be of value (actual or potential) to a competitor of the Company, and (iii) is not generally known, or readily available by lawful means, to the public (including compiled information that is not publicly available in such a consolidated form). Confidential Information shall not include any information that has been voluntarily disclosed to the public by the Company (except where such public disclosure has been made by Employee without authorization) or that has been independently developed and disclosed by others, or that otherwise has entered the public domain through lawful means.

61.     In addition, the NSNDAs prohibit the Individual Defendants, for one year following their resignation, from directly or indirectly "solicit[ing], market[ing], service[ing], sell[ing], to or attempt[ing] to sell to" the US Foods customers they services or received confidential information about during their employment with US Foods (referred to in the NSNDAs as "Restricted Customers").  (*See*, 2013 Agreements at § 6.)

62.     The NSNDAs also contain a provision whereby the Individual Defendants agreed to return to US Foods all US Foods' property and confidential information upon termination of their employment.  *See*, 2013 Agreements at § 5.)

63.     The NSNDAs include examples of prohibits solicitation including "advising or encouraging a Restricted Customer to reduce or cease doing business with the Company or to do business with a Person that provides products or services competitive with the Company; switching or swapping sales, solicitation, or service responsibility for a Restricted Customer with an employee of a Person that is competitive with the Company.") (*Id.*)

64.     The Individual Defendants agreed that their 2013 Agreement are governed by Illinois law.  (*Id.* at § 16.)  The Individual Defendants further agreed that Illinois would serve as the exclusive venue.  (*Id.* at § 16).  The Individual Defendants further agreed to consent to personal jurisdiction.

18

65.     The Individual Defendants further agreed, that they would pay USF its reasonable attorneys' fees and costs incurred by USF in enforcing the Agreement. (*Id.* at § 13.)

66.     In addition to being bound by the provisions in the NSNDAs, the Individual Defendants were subject to US Foods' policies prohibiting unauthorized use or disclosure of US Foods' confidential information, including, but not limited to price lists, client lists, Customer Order Guides, and other proprietary information. These policies are contained in the US Foods Handbook. A true copy of relevant excerpts of the US Foods Employee Handbook is attached hereto as **Exhibit C**.

67.     Melidona acknowledged receipt of his Handbook on July 28, 2003, and a revised version on November 23, 2011. His signed acknowledgements are collectively attached hereto as **Exhibit D**.

68.     Houck acknowledged receipt of his Handbook on May 22, 2008, and a revised version on January 19, 2011. His signed acknowledgements are collectively attached hereto as **Exhibit E**.

69.     In particular, by signing these Acknowledgements, the Individual Defendants agreed to abide by US Foods' policies regarding maintaining information security and protecting the company's proprietary and confidential information.

70.     In particular, the Individual Defendants agreed not to "directly or indirectly disclose, reveal or use for [themselves] or others any confidential or proprietary information of the Company without prior written permission of the Company, other than in the performance of [his] duties for the Company." The Handbook defines confidential and proprietary information to include customer information, pricing, margins, routes, delivery schedules and more. The Individual Defendants also agreed not to remove confidential information from US Foods unless

they had a legitimate purpose for doing so.

**D.** **Defendants' Coordinated Scheme to Raid US Foods Workforce and Divert Business to Latina Foods**

71.     Throughout their employment with US Foods, and in particular during their employment in US Foods' Buffalo Division, the Individual Defendants utilized US Foods' confidential information and had frequent contact with US Foods' customers related to the services provided by US Foods.

72.     During the last few months, including a period of time during which the Individual Defendants remained employed by US Foods and received compensation from US Foods, the Individual Defendants engaged in a variety of improper conduct in violation of their NSNDAs and their continuing fiduciary duties and duties of loyalty to USF, including but not limited to: (1) soliciting US Foods employees to leave US Foods for employment with Latina Foods; (2) soliciting US Foods customers to do business with Latina Foods in violation of paragraph 6 of their NSNDAs; (3) using US Foods confidential, proprietary, and trade secret information to conduct business on behalf of and for the benefit of Latina Foods with US Foods' long-standing customers; (4) improperly retaining and using, without authorization, US Foods' trade secret information; and (5) breaching their duty of loyalty to US Foods by using US Foods' time and resources to plan their move to Latina Foods, including preparations to take US Foods' customers and employees to Latina Foods.

73.     Upon information and belief, in or around March 2014, Defendants met at the International Pizza Expo in Las Vegas, Nevada, to coordinate a concerted scheme to solicit US Foods' employees and customers on behalf of Latina Foods; interfere with US Foods' relationships with its employees and customers, contractual or otherwise; and misappropriate US

Foods' confidential, proprietary and/or trade secret information.

74.     Upon information and belief, after that initial meeting in Las Vegas, Nevada, and in the ensuing weeks leading up to his resignation from US Foods and imminent employment with Latina Foods, Houck forwarded several confidential and proprietary US Foods documents to his personal email account in direct violation of his NSNDA.

75.     On or around May 23, 2014, Houck used his USF-issued e-mail account to forward to his personal email account a confidential, US Foods spreadsheet titled "TM_Ranking 1 .xls." The spreadsheet contained a list of more than forty (40) TMs for the Buffalo Division, including confidential, internal information ranking US Foods' Territory Managers in the Buffalo Division. It also provided confidential, proprietary, and/or trade secret information regarding each TMs' sales, quantities of cases sold, gross profit, and net accounts. This would provide competitors with a competitive advantage of knowing which US Foods employees to target for employment and which employees to avoid without having to expend the substantial time and resources as US Foods.

76.     US Foods is informed and believes that the Individual Defendants stole the "TM_Ranking 1.xls" spreadsheet and Defendants, including Latina Foods, utilized the information contained therein to identify and solicit US Foods' employees to leave US Foods and join Latina Foods. In particular, Defendants solicited some of US Foods' highest ranked TMs including, Salvatore Mallia ("Mallia"), John Lofreddo ("Lofreddo"), Robert Divita ("Divita"). After the Individual Defendant's departure, Defendants also solicited US Foods Territory Manager Don Alfieri ("Alfieri"), who has since resigned and commenced employment with Latina Foods.

77.     Beginning in or around May 2014 and continuing through June 2014, the

Defendants engaged in a coordinated scheme to solicit US Foods employees for employment with Latina Foods. Defendants' improper solicitation of US Foods' employees caused US Foods to provide the employees with additional compensation and benefits to retain the employees.

78.     On or around the week of May 12, 2014, and approximately two (2) weeks before Melidona resigned from US Foods, Melidona solicited Loffredo for employment with Latina Foods. Specifically, Melidona arranged to meet Loffredo at a Tim Horton's coffee shop under the auspices that they needed to discuss legitimate USF business. However, at that meeting, Melidona told Loffredo that he had been considering employment elsewhere and that there were three different places where he might go, one of which included Latina Foods. Melidona made this statement despite the fact that he had already received and accepted an offer of employment from Latina. Melidona suggested, encouraged, and requested that Loffredo leave USF and join him at Latina Foods. Melidona also stated that someone would be contacting him about employment shortly. True to Melidona's words, Latina Foods contacted him regarding employment shortly thereafter. On or around June 27, 2014, Loffredo received a call from Jim Rusillio, District Manager for Latina Foods. Rusillio told Loffredo that two other US Foods employees had recently been paid by US Foods to stay with the company, and that Loffredo should "fuck them and take the money" and leave US Foods.

79.     A few days prior to Melidona's last day at US Foods, he also solicited Michael Stiglemeier, a US Foods product buyer.

80.     On or around June 18, 2014, Houck again used his USF-issued e-mail account to forward to his personal email account a confidential, USF spreadsheet titled "2014 New Acct Status Report.xls." This spreadsheet is a USF document that identifies all new customer accounts for USF's Buffalo Division in 2014. It identifies which USF Territory Manager

22

acquired the customer account, and provides contact information for each customer account. This document not only identifies new customer accounts acquired by Defendant Houck, but for all Territory Mangers in USF's Buffalo Division.

**G.**    **The Individual Defendants' Resignation from US Foods and Subsequent Employment with Latina Foods.**

81.    On or about May 16, 2014, Melidona informed US Foods that he would be resigning from US Foods effective May 30, 2014.  On or about May 30, 2014, Melidona resigned from US Foods to join Latina Foods.  At the time of his resignation, Melidona returned only his US Foods-issued laptop computer.  Melidona did not return any other US Foods property, including any hard copy documents constituting and/or containing US Foods' confidential, proprietary, and/or trade secret information.

82.    Melidona admitted during his exit interview with US Foods that he was exposed to confidential information during his employment with US Foods, including pricing and customer information.  Upon information and belief, Defendant Melidona also did not return all US Foods hard copy documents containing confidential, proprietary and trade secret information.

83.    Upon information and belief, Melidona is working in a sales roles for Latina Foods similar to his previous sales role with US Foods, working in the exact same sales territory.

84.    Shortly after Melidona left, Franco's Pizza, one of US Foods' largest customers in the Buffalo Division and one that the Individual Defendants previously serviced, ceased purchasing two primary products, chicken wings and flour, from US Foods for one of its restaurant locations and instead began purchasing those products from Latina Foods.  A few weeks later, Franco's Pizza ultimately ceased purchasing chicken wings and flour from US Foods for all five (5) of its restaurant locations and instead began purchasing those products from Latina Foods.  On information and belief, prior the Individual Defendants departure from US

Foods, Latina Foods conducted little to no business with Franco's Pizza.

85.     On or about June 6, 2014, Houck informed US Foods that he would be resigning from US Foods effective June 20, 2014. On or about June 20, 2014, Houck resigned from US Foods to join Latina Foods. At the time of his resignation, Houck returned only his US Foods-issued laptop computer. Houck did not return any other US Foods property, including any hard copy documents constituting and/or containing US Foods' confidential, proprietary, and/or trade secret information.

86.     During Houck's exit interview with US Foods he was evasive and indicated that he considered challenging his NSNDAs with US Foods. When US Foods asked Houck if Latina Foods had promised to pay him commissions or enhanced compensation if he was able to sell to or take US Foods customers for Latina Foods Houck refused to answer. When US Foods asked Houck when he first communicated with Latina Foods about potential employment, Houck refused to answer.

87.     Houck admitted during his exit interview with US Foods that he was exposed to confidential information during his employment with US Foods, including pricing and the products US Foods' customers would purchase.

88.     Upon information and belief, Houck is working in a sales roles for Latina Foods similar to his previous sales role with US Foods, working in the exact same sales territory.

89.     Upon information and belief, the Individual Defendants have directly and indirectly used US Foods confidential, proprietary, and trade secret information to solicit US Foods customers that they serviced at US Foods to do business with Latina Foods. Since the Individual Defendants have left US Foods for Latina Foods, US Foods has lost significant business from these customers to Latina Foods.

90.     Based on Defendants' solicitations and transfer of US Foods customers—made without the requisite time required to learn the necessary and confidential preferences of customers—Defendants are improperly using and, therefore, misappropriating US Foods' property, including its confidential, proprietary, and/or trade secret information, and otherwise using unlawful means to unfairly compete with US Foods.  Defendants are not developing their own customers, business strategies, business relationships, and confidential information using their own efforts and employees, but are rather trading upon US Foods' customer relationships and utilizing the Individual Defendants' misappropriated knowledge of US Foods' confidential and trade secret information to improperly move US Foods' customers from US Foods to Latina Foods.

91.     US Foods is informed and believes that the Individual Defendants' solicitation of US Foods' customers and misappropriation and threatened misappropriation of US Foods' property—including its confidential, proprietary, and trade secret information—was foreseen by Latina Foods.

92.     On information and belief, the Individual Defendants were hired by Latina Foods to develop Latina Foods' business and solicit US Foods customers as part of Latina Foods' plan to acquire US Foods' business through unlawful means.  At a minimum, Latina Foods recognized that the Individual Defendants would use US Foods' property, including its confidential, proprietary, and/or trade secret information, in their work for Latina Foods and, if not expressly requesting it, did not prevent it.

93.     The Individual Defendants' illicit activities, including their use of US Foods' confidential, proprietary, and trade secret information, while in the employ of Latina Foods have been within the course and scope of their employment with Latina Foods, was directly related to

and an outgrowth of their work for Latina Foods, and for their own personal benefit and gain.

94.     The Individual Defendants have also failed to return all US Foods property, including confidential, proprietary, and/or trade secret information to US Foods, in violation of their NSNDAs, including but not limited to sensitive information pertaining to US Foods customers.

**H.      Effects of Defendants Acts.**

95.     With the Individual Defendants' departure, their knowledge of and access to US Foods' confidential, proprietary and/or trade secret information, their suspected and apparent use of US Foods' confidential, proprietary and/or trade secret information, and their solicitation of USF customers and employees for Latina Foods, USF is threatened with losing millions of dollars in business and the loss of value of its goodwill, customer relationships, and confidential, proprietary and/or trade secret information, which cannot be adequately addressed at law.

96.     USF has already lost significant business on certain US Foods accounts previously assigned to the Individual Defendants.  For example, US Foods has already lost well over $55,000 in sales from just a single customer, Franco's, a US Foods account previously assigned to Melidona, who have reduced their business with US Foods in favor of the Individual Defendants and Latina Foods since the Individual Defendants' resignation.  Based on the gross profits displaced by the Individual Defendants to date, if they continue to displace these customers, they will effect over $1 million in sales from Franco's along, over the course of a year.

97.     By virtue of their position with Latina Foods, the Individual Defendants will undoubtedly attempt to continue to solicit US Foods customers and employees and continue to use US Foods property, including its confidential, proprietary and/or trade secret information.

98.     The Individual Defendants are causing, threatening to cause, and/or will continue to cause or threaten to cause, significant irreparable harm to US Foods, including the loss of value of confidential, proprietary and/or trade secret information, the loss of or damage to long-standing customer and employee relationships, loss of goodwill, as well as damage to US Foods' reputation as an industry leader and its ability to successfully market its goods and services. Money alone cannot make USF whole and USF continues to be irreparably harmed. Thus, injunctive relief is necessary and proper.

### COUNT ONE
### Breach of Contract
### (against Defendants Melidona and Houck)

99.     US Foods restates and incorporates by reference those allegations set forth in paragraphs 1 through 98 above, as if set forth fully herein.

100.    The NSNDAs that the Individual Defendants executed constitute valid and enforceable agreements.

101.    US Foods performed all of the duties and obligations it agreed to and owed the Individual Defendants under the NSNDAs.

102.    The Individual Defendants' obligations under the NSNDAs are reasonable in terms of duration and activities restricted and do not impose a greater restraint than is necessary to protect US Foods' legitimate business interests.

103.    Under the NSNDAs, the Individual Defendants agreed not to solicit, within one year of cessation of their employment with US Foods, certain of US Foods' customers.

104.    In violation of the NSNDAs, the Individual Defendants have directly or indirectly (by assisting others) solicited US Foods customers to leave US Foods and do business with Latina Foods instead.

105.    Under the NSNDAs, the Individual Defendants also agreed to return all US Foods property and information upon cessation of their respective employment with US Foods.

106.    In violation of the NSNDAs, the Individual Defendants failed to return all US Foods property, including its confidential, proprietary, and/or trade secret information following the cessation of their respective employments with US Foods.

107.    Under the NSNDAs, the Individual Defendants also agreed not to directly or indirectly divulge or make use of confidential information or trade secrets without obtaining prior written consent of US Foods.

108.    In violation of the NSNDAs, the Individual Defendants have directly or indirectly divulged or made use of confidential information or trade secrets without obtaining prior written consent of US Foods.

109.    As a direct and proximate cause of the Individual Defendants' breaches of the NSNDAs, US Foods has been damaged and continues to be damaged in an amount to be determined at the trial of this case, but which is in excess of the minimum jurisdictional amount of this Court, including attorneys' fees and costs to the extent allowed by law.

110.    US Foods will suffer irreparable injury if the Individual Defendants are not enjoined from soliciting US Foods customers to leave US Foods and do business with Latina Foods in violation of the NSNDAs with US Foods.  US Foods' damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief.

**COUNT TWO**
**Breach of Duty of Loyalty**
**(against Defendants Melidona and Houck)**

111.    US Foods restates and incorporates by reference those allegations set forth in

paragraphs 1 through 98 above, specifically excluding those allegations that specifically allege misappropriation of US Foods' confidential and/or trade secret information.

112.     US Foods specifically asserts that this breach of duty of loyalty count does not involve the misappropriation of trade secret or confidential information.

113.     While employed by US Foods, the Individual Defendants owed US Foods a duty of loyalty, faithful service, and regard for US Foods' interests.

114.     Defendants Melidona and Houck breached their duty of loyalty to US Foods as a result of the acts alleged herein, including but not limited to: (1) obtaining without permission and without authorization US Foods' property that they intended to use during their employment with US Foods' competitor and with the intent to unfairly compete with US Foods during and after they left their employment with US Foods; (2) using US Foods' time and resources to plan their move to US Foods' competitor, including preparations to take US Foods data, US Foods employees, and US Foods customers; and/or (3) using their employment position for their benefit and their future move to US Foods' competitor in their interactions with customers and/or employees; and/or (4) deliberately disrupting US Foods' business relationship with its customers while still employed with US Foods, improperly accessing US Foods' property, including its confidential, proprietary, and/or trade secret information concerning those customers, and making false statements regarding US Foods to its customers.

115.     Defendants Melidona and Houck also breached their duty of loyalty by competing against US Foods and usurping US Foods' corporate opportunities while they were still employed by US Foods.

116. As a direct and proximate result of the Individual Defendants' breaches of their duty of loyalty, US Foods has been damaged and the Individual Defendants have gained and benefited and will continue to gain and benefit from their breach.

117. As a direct and proximate result of the Individual Defendants' breaches, US Foods has been damaged in an amount to be determined at the trial of this case, but which is in excess of the minimum jurisdictional amount of this case.

118. The Individual Defendants' actions were malicious and willful and in conscious disregard of US Foods' rights. Accordingly, US Foods is entitled to recover its actual damages and punitive damages, as well as its attorneys' fees and costs, in an amount to be determined at trial.

## COUNT THREE
### Aiding and Abetting Breach of Duty of Loyalty
### (against all Defendants)

119. US Foods restates and incorporates by reference those allegations set forth in paragraphs 1 through 98 above, specifically excluding those allegations that specifically allege misappropriation of US Foods' confidential and/or trade secret information.

120. US Foods specifically asserts that this aiding and abetting breach of duty of loyalty count does not involve the misappropriation of trade secret or confidential information.

121. Defendants, and each of them, knew that the Individual Defendants owed a duty of loyalty to US Foods or knew that the Defendants were not permitted under the law to induce the breach of loyalty of the Individual Defendants.

122. Defendants, and each of them, knew that they were not permitted by law to induce another to breach a duty of loyalty to US Foods by, among other things, (1) soliciting the Individual Defendants, individually and collectively, from obtaining without permission and

without authorization US Foods' property that they intended to use during their employment with US Foods' competitor and with the intent to unfairly compete with US Foods during and after they left their employment with US Foods; (2) soliciting the Individual Defendants to use and using US Foods' time and resources to plan the Individual Defendants' move to US Foods' competitor, including the Individual Defendants' preparations to take US Foods data, US Foods employees, and US Foods customers; (3) soliciting the Individual Defendants to use and using their employment position for Defendants' benefit and future move to US Foods' competitor in their interactions with customers and employees; and/or (4) deliberately disrupting US Foods' business relationship with US Foods' customers, improperly accessing US Foods' property, including its confidential, proprietary, and trade secret information concerning those customers, and making false statements regarding US Foods to its customers.

123.    Defendants, and each of them, knew that they improperly solicited each to breach their duty of loyalty by competing against US Foods and usurping US Foods' corporate opportunities while they were still employed by US Foods or inducing the Individual Defendants to do the same.

124.    Defendants, and each of them, provided substantial assistance and/or encouragement to each other to breach their duty.

125.    As a direct and proximate result of Defendants' conduct, US Foods has been damaged and the Defendants have gained and benefited and will continue to gain and benefit from their breach.

126.    As a direct and proximate result of Defendants' conduct, US Foods has been damaged in an amount to be determined at the trial of this case, but which is in excess of the minimum jurisdictional amount of this case.

127.     Defendants' actions were malicious and willful and in conscious disregard of US Foods' rights.  Accordingly, US Foods is entitled to recover its actual damages and punitive damages, as well as its attorneys' fees and costs, in an amount to be determined at trial.

## COUNT FOUR
### Violation of the Illinois Trade Secrets Act (765 ILCS § 1065 *et seq.*)
**(against all Defendants)**

128.     US Foods restates and incorporates by reference those allegations set forth in paragraphs 1 through 98 above, as if set forth fully herein.

129.     US Foods' trade secret information includes, *inter alia*, US Foods' confidential pricing, marketing plans, business plans, and business strategies, and customer information, including, but not limited to, customer lists, customer preferences, strategies for soliciting prospective customers, pricing, margins, costs, deviations, promotions, advertising allowances, historical usage and preferences, customer marketing data and purchasing patterns, applicable discounts and planned research and development for its customer base.

130.     This information constitutes trade secrets, pursuant to the Illinois Uniform Trade Secret Act, 765 ILCS § 1065/1, *et seq.*, because US Foods derives independent economic value from this information not being generally known to the public and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

131.     Defendants have acquired US Foods trade secrets by improper means.

132.     Defendants have disclosed and/or used, and/or have threatened (by their conduct) to disclose and/or use,  US Foods trade secrets without express or implied consent.

133.     At the time of disclosure or use of the US Foods' trade secrets, Defendants knew or had reason to know that their knowledge of the trade secrets was derived from or through a

person who had utilized improper means to acquire them and/or that they were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use.

134.    Defendants actually misappropriated, and/or threaten to misappropriate, US Foods' trade secrets without its consent, in violation of Illinois law.

135.    As a result of Defendants; conduct in violation of the Illinois Trade Secrets Act, US Foods has incurred damages, including attorneys' fees and costs to the extent allowed by law, in an amount to be determined at the trial of this case.

**COUNT FIVE**
**Tortious Interference with Prospective Economic Advantage**
**(against all Defendants)**

136.    US Foods restates and incorporates by reference those allegations set forth in paragraphs l through 98 above, specifically excluding those allegations that specifically allege misappropriation of US Foods' confidential and/or trade secret information.

137.    US Foods specifically asserts that this tortious interference count does not involve the misappropriation of trade secret or confidential information.

138.    US Foods has legitimate, existing and prospective economic relationships with numerous customers and employees.

139.    Defendants have knowledge of these existing customer relationships.

140.    Defendants intended to harm US Foods by interfering with US Foods' relationships with its customers, and to unlawfully solicit US Foods' customers to leave US Foods and do business with Latina Foods, and also by acts of disloyalty described above calculated to interfere with US Foods' relationships with customers, and its competitive advantage.

141.    Defendants have unlawfully interfered and continue to interfere with US Foods' relationships with its customers and to solicit customers to discontinue their business with US

Foods and/or to purchase from Latina Foods the same products or services that they previously purchased or are currently purchasing from US Foods.

142.    Defendants have unlawfully interfered and continue to interfere with US Foods' relationships with its employees and to solicit US Foods employees to terminate their employment with US Foods for employment with Latina Foods.

143.    Defendants' actions are without privilege or justification.

144.    As direct and proximate result of these actions, US Foods has suffered and continues to suffer harm and is entitled to recover damages against Defendants.

145.    Defendants' acts alleged herein were willful, wanton, malicious, and oppressive, and entitle US Foods to an award of exemplary and punitive damages against Defendants.

**COUNT SIX**
**Tortious Interference with Contractual**
**(against all Defendants)**

146.    US Foods restates and incorporates by reference those allegations set forth in paragraphs l through 98 above, specifically excluding those allegations that specifically allege misappropriation of US Foods' confidential and/or trade secret information.

147.    US Foods specifically asserts that this tortious interference count does not involve the misappropriation of trade secret or confidential information.

148.    US Foods has existing contractual relationships with its customers and the Individual Defendants whereby the Individual Defendants are obligated to refrain from unlawfully soliciting US Foods' customers and to refrain from using or disclosing US Foods' confidential, proprietary and/or trade secret information.  US Foods has existing contractual relationships with customers that derive value to US Foods.  These contractual relationships constitute property interests entitled to protection from unjustified interference by US Foods' competitors or any other persons, including Defendants.

34

149.    Defendants intentionally and without justification have interfered and continue to interfere, as well as engage in other unlawful actions described above, with US Foods' contractual relationships with its customers by soliciting customers to discontinue their business with US Foods and/or to purchase from Latina Foods the same products or services that they previously purchased or are currently purchasing from US Foods, and for the Individual Defendants to breach their agreements with US Foods.

150.    Defendants intentionally and without justification have interfered and continue to interfere, as well as engage in other unlawful actions described above, with US Foods' contractual relationships with its employees by soliciting US Foods employees to terminate their employment with US Foods for employment with Latina Foods, and to breach their agreements with US Foods.

151.    Defendants' actions are without privilege or justification**.**

152.    As direct and proximate result of these actions, US Foods has suffered and continues to suffer harm and is entitled to recover damages against Defendants.

## COUNT SEVEN
### Conspiracy
### (against all Defendants)

153.    US Foods restates and incorporates by reference those allegations set forth in paragraphs l through 98 above, as if set forth fully herein.

154.    Defendants reached an agreement to accomplish an unlawful purpose and/or a lawful purpose by unlawful means.

155.    Defendants conspired by concerted action to misappropriate US Foods' property including its confidential, proprietary and/or trade secret information, convert US Foods

property, solicit US Foods' customers, other unlawful acts described herein, and/or unlawfully interfere with US Foods' relationships with its customers, contractual or otherwise.

156.    Defendants had a meeting of the minds on this object or course of action and committed one or more overt acts to further the object or course of action.  These overt acts include, but are not limited to: (a) taking, without US Foods' express or implied consent, US Foods' property, including its confidential, proprietary and/or trade secret information; (b) misappropriating US Foods' confidential, proprietary and/or trade secret information; (c) converting US Foods' property; (d) breach of duty of loyalty and inducing breaches of loyalty; and (e) soliciting US Foods' customers through unlawful means.

157.    There is no adequate remedy at law for Defendants' conspiracy because it will inevitably influence the further course of development of Latina Foods' competing business at US Foods' expense.  US Foods seeks injunctive relief against this conduct.

158.    In the absence of injunctive relief enjoining Defendants from further conspiring against US Foods, US Foods will suffer irreparable harm for which there is no adequate remedy at law.  US Foods seeks injunctive relief against this conduct.

159.    As direct and proximate result of these actions, US Foods has suffered and continues to suffer harm and is entitled to recover damages against Defendants.

**COUNT EIGHT**
**Unfair Competition**
**(against all Defendants)**

160.    US Foods restates and incorporates by reference those allegations set forth in paragraphs l through 98 above, as if set forth fully herein, specifically excluding those allegations that specifically allege misappropriation of US Foods' confidential and/or trade secret information.

161.    US Foods specifically asserts that this unfair competition count does not involve the misappropriation of trade secret or confidential information.

162.    The Defendants undertook the foregoing acts to gain an unfair competitive advantage over US Foods.

163.    The Defendants willfully undertook the foregoing acts with knowledge of and disregard for US Foods' rights, and with the intention of causing harm to US Foods and benefiting themselves.

164.    US Foods is informed and believes that Defendants are unfairly competing in the marketplace.

165.    As a result of the Defendants' unfair competition by targeting US Foods customers through unlawful means and methods, US Foods has been injured and faces irreparable injury.  US Foods is threatened with losing customers and goodwill in amounts which may be impossible to determine, unless the Defendants are enjoined and restrained by order of this Court.

**DEMAND FOR JURY**

166.    US Foods demands a jury trial and previously tendered the appropriate fee.

**PRAYER FOR RELIEF**

WHEREFORE, US Foods seeks judgment in its favor and an Order granting the following relief:

1.    A temporary restraining order and preliminary and permanent injunction compelling the Individual Defendants, their agents, and all those persons in active concert or participation with the Individual Defendants to:

a.    Refrain from soliciting or conducting  business with any US Foods customers that they serviced at US Foods before they resigned as required by their Non-Solicitation and Non-Disclosure Agreements;

b.    Immediately return to US Foods all US Foods property, including all confidential, proprietary and/or trade secret information, or other property belonging to US Foods in both hard copy and electronic form;

c.    Make available for inspection and imaging any computers, personal data devices, e-mail accounts, online storage, or electronic storage devices owned by, assigned to, or otherwise in the possession of the Individual Defendants at any time from January 1, 2014 to the present that may contain US Foods property;

d.    Identify to US Foods any and all USF customers whom the Individual Defendants, or anyone acting on their behalf, have solicited or otherwise contact since their terminations from US Foods, including the name of the customer, the date of the contact, and the method of communication;

e.    Refrain from any use or disclosure of US Foods' confidential, proprietary and/or trade secret information;

f.    Swear and account for all US Foods property, including all information removed, downloaded, transferred, printed, accessed or e-mailed from US Foods' computers or computer network;

g.    Provide US Foods with authorization to obtain access to all telephone records, electronic records, files, cloud-based accounts, or e-mail accounts owned, used, or accessed by the Individual Defendants, and any DropBox accounts, except for any attorney-client privileged information or documents, that may contain US Foods property to ensure that US Foods' property has been returned;

h.    Refrain from violating their respective restrictive covenants set forth in the Non-Solicitation and Non-Disclosure Agreements they executed during their employment with US Foods.

i.    Refrain from inducing or attempting to induce US Foods' employees or former employees to breach the terms of their Non-Solicitation and Non-Disclosures Agreements, including soliciting US Foods' current employees to leave their employment with US Foods;

j.    Refrain from any spoliation of evidence; and

k.    Submit to a compliance mechanism to ensure that US Foods' property, including its confidential, proprietary and/or trade secret information is intact and the Defendants are abiding by their contractual and legal

obligations to US Foods, including continuing depositions and required affidavits from Defendants.

2.     A preliminary and permanent injunction ordering Latina Foods, their agents, and all those persons in active concert or participation with Latina Foods to:

    a.     Refrain from violating the provisions of the above preliminary and permanent injunctions;

    b.     Return to US Foods all confidential, proprietary and/or trade secret information or other property belonging to US Foods in both hard copy and electronic form;

    c.     Refrain from using, disclosing, or acquiring US Foods' confidential, proprietary and/or trade secret information; and

    d.     Refrain from unlawfully interfering with US Foods' relationships with its customers and employees.

3.     That any preliminary or permanent injunction incorporate a tolling provision, whereby the protected periods specified in the Non-Solicitation and Non-Disclosure Agreements are tolled and extended for the length of time that the Court determines that the Individual Defendants violated the Non-Solicitation and Non-Disclosure Agreements;

4.     That Defendants be ordered to disgorge all improper benefits, profits, and/or gains;

5.     For an accounting of the misuses of US Foods' information and property and other unlawful acts;

6.     That US Foods be awarded compensatory damages to be proven at trial;

7.     That US Foods be awarded exemplary or punitive damages in an amount to be proven at trial;

8.     That US Foods be awarded its costs and attorneys' fees as permitted by statute or contract; and

9.      That the Court grant such further relief as it deems just.

Dated:  July 21, 2014                            Respectfully submitted,

**US FOODS, INC.**

By:    /s/ Justin K. Beyer
            One of Its Attorneys

Justin K. Beyer
Seyfarth Shaw LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois  60603
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Robert B. Milligan (*pro hac vice* to be sought)
Eugene S. Suh (*pro hac vice* to be sought)
D. Joshua Salinas (*pro hac vice* to be sought)
Seyfarth Shaw LLP
2029 Century Park East, Suite 3500
Los Angeles, California 90067
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

*Attorneys for Plaintiff US Foods, Inc.*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing **US FOODS, INC.'s ("USF") COMPLAINT** was served upon the following via Federal Express and e-mail as noted  below on this 21st day of July, 2014:

Randolph C. Oppenheimer
Damon Morey LLP
The Avant Office
200 Delaware Avenue, Suite 1200
Buffalo, New York 14202
*roppenheimer@damonmorey.com*
*Counsel for Defendants Paul Melidona and David Houck*

D. Lee Khachaturian
Dickson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit Michigan 48226-3425
*dkhachaturian@dickinsonwright.com*
*Counsel for Defendant Latina Boulevard Foods, LLC*

Paul Melidona
53 Patrice Terrace
Williamsville, NY 14221

David Houck
6 Riemers Ave.
Lancaster, NY 14086
*daviddhouck@msn.com*

Charles Marazzo
Latina Foods
1 Scrivner Dr.
Cheektowaga, NY 14227

Registered Agent Name & Address for Latina Boulevard Foods, LLC:
NRAI SERVICES, INC.
1200 South Pine Island Road
Plantation, FL 3332

s/Justin K. Beyer

41